481 So.2d 52 (1985)
Robert Glenn DIXON, Appellant,
v.
DEPARTMENT OF ADMINISTRATION DIVISION OF RETIREMENT, Appellee.
No. BE-69.
District Court of Appeal of Florida, First District.
December 19, 1985.
*53 Joyce Davis, Tallahassee, for appellant.
William A. Frieder, Asst. Div. Atty., Tallahassee, for appellee.
ERVIN, Judge.
This is an appeal from the Retirement Commission's denial of in-line-of-duty disability retirement benefits to appellant, Dixon. We reverse with directions.
From 1969-1983, Dixon worked for the state, primarily for the Department of Revenue (Department). In 1983, Dixon became permanently and totally disabled due to a mental disorder and ceased working for the Department. Thereafter, he applied for disability retirement benefits with the Division of Retirement, which approved regular disability retirement benefits, but denied in-line-of-duty disability retirement benefits.
In 1968, Dixon first began receiving psychiatric treatment for a disorder classified as schizo-affective schizophrenia. Dixon again had difficulty in 1974, but his condition stabilized and remained in remission through 1980. At the hearing below, Dr. Miles, a psychiatrist, testified that Dixon was under his regular care from early 1974 until June 1983 for treatment of the mental disorder. During those years, Dixon functioned at work without great difficulty. In 1980, Dixon related to Dr. Miles that he had problems with his mental condition that were associated with changes at work, including: (1) In 1979, Dixon's position in the Department was changed eliminating certain supervisory duties; and (2) in 1980, Dixon encountered problems pertaining to the hiring of a new supervisor. Although other factors contributed to the aggravation of Dixon's illness, such as his brother's death in November 1981 and the loss of a love relationship in 1982, Dr. Miles opined that the pressures at work were the primary cause of the stress, setting in motion and initiating Dixon's mental problems. Subsequent to a brief hospitalization in 1980, Dixon was not hospitalized again until late 1982. Thereafter, Dixon's mental condition deteriorated until, finally in April 1983, he was unable to return to work. Dixon testified that his difficulties began in 1980 when the new supervisor was hired. Thereafter, according to Dixon, his new supervisor constantly harassed and reprimanded him, causing serious stress, and aggravating and exacerbating his condition. In our judgment, Dixon has met the test required for in-line-of-duty disability benefits.
*54 In Blanton v. Division of Retirement, 480 So.2d 134 (Fla. 1st DCA 1985), we stated: "The test for an in-line-of-duty disability award is whether `an injury or illness arising out of and in the actual performance of duty required by a member's employment', section 121.021(13), was the substantial, producing cause or an aggravating cause of a member's total and permanent disability." (emphasis supplied). See also Havener v. Division of Retirement, 461 So.2d 231, 233 (Fla. 1st DCA 1984), recognizing that "[s]ection 121.021(13) does not exclude disabilities which arise from the aggravation of a pre-existing condition." (emphasis supplied)
It is undisputed that Dixon is permanently and totally disabled. The crucial question is whether Dixon proved by a preponderance of evidence that (1) his illness was work-related, and (2) his illness was a substantial, producing cause, or an aggravating cause of his permanent total disability. Dr. Miles testified that Dixon's work set his illness in motion and aggravated his pre-existing mental condition. While there were other factors which contributed to the aggravation of Dixon's illness, Dr. Miles testified that Dixon's difficulty at work caused the acceleration in his illness. Clearly, this is competent, substantial evidence supporting a finding that Dixon's illness arose out of and in the actual performance of the duties required by his job. The record contains no competent, substantial evidence to support the Commission's conclusion that the illness was not work-related. Moreover, the evidence establishes that the work-related illness was the substantial, producing cause of Dixon's permanent total disability. The evidence is overwhelming that Dixon's illness, associated with his stressful work environment, ultimately led to his total inability to work.
The Commission held that Dixon did not prove by competent, substantial evidence that any injury or illness arising out of and in the actual performance of duty required by his employment was the substantial producing cause, or an aggravating cause of his disability. In support of this holding, the Commission made two supplemental findings: First, it stated that Dixon did not prove by a preponderance of the evidence that he encountered any unusual stress in his job that was the substantial, producing cause or an aggravating cause of his disability. This is an incorrect statement of law. The Commission is apparently applying the test used in workers' compensation cases to internal failure situations, requiring that for an accident to arise out of employment, the claimant must show unusual strain or stress resulting from a specifically identifiable effort not routine to the type of work the claimant was accustomed to performing. Robert E. Mosca & Co. v. Mosca, 362 So.2d 1340 (Fla. 1978). We have consistently refused to apply this standard to retirement disability benefit cases under Section 121.021(13). Division of Retirement v. Allen, 395 So.2d 1192 (Fla. 1st DCA 1981); Division of Retirement v. Putnam, 386 So.2d 824 (Fla. 1st DCA 1980). In Putnam, we stated: "[I]n contrast to the compensable injury occurring by `accident' in workers' compensation parlance, a compensably disabling illness need not be precipitated by unusual strain or exertion not routine to the employee's accustomed work." Id., at 824-825. Dixon need only prove that his work-related illness was a substantial or aggravating cause of his permanent total disability. This he has clearly done. No other burden is required under Chapter 121.
Second, the Commission stated that Dixon failed to prove that his job was characterized by unusual stress differentiating it from most occupations. The Commission thereby imposed on Dixon the burden to prove that he encountered unusual stress in his job which differentiates it from most other occupations. The Commission's application of this burden was apparently based on a statement of this court in Botner v. State, Division of Retirement, 438 So.2d 94 (Fla. 1st DCA 1983), where we found that the evidence did not establish that Botner's disability fell within the statutory requirement for in-line-of-duty *55 benefits. Botner had contended that the stress of working as a teacher contributed to his psychological difficulties, ultimately resulting in a breakdown that brought about retirement. We concluded that the evidence revealed that Botner would probably have aggravated his preexisting condition in any work-related situation, and then contrasted the facts in Botner with those in Division of Retirement v. Allen, 395 So.2d 1192 (Fla. 1st DCA 1981), holding that Allen had encountered unusual stress in his job "differentiating it from most occupations." Allen, however, did not impose an additional burden on one seeking enhanced retirement benefits to prove that the job had unusual stress differentiating it from most other occupations. Rather, Allen found the evidence sufficient to justify a finding that Allen's prison guard job was more stressful than other jobs  thereby supporting its ultimate conclusion that the permanent disability suffered resulted from a stroke, which was caused by his job as a correctional officer. In this case the Commission erroneously imposed on Dixon the affirmative burden, not recognized by law, to prove that his job was characterized by "unusual stress differentiating it from most other occupations."
Appellee also relies on the Botner case to affirm the denial of in-line-of-duty benefits. This court in Botner found that the evidence did not establish that Botner's disability fell within the parameters of Section 121.021(13). In Botner, however, there was evidence that Botner would have aggravated his pre-existing mental condition through the passage of time alone or from any type of work environment. In the case at bar, there is no competent, substantial evidence to support such a finding. The Division's only testimony directed to that issue came from a personnel officer of the Department of Revenue, Mr. Fritchman, who testified that Dixon had manifested a consistently increasing degree of symptomatology which was disruptive to his work situation during his term with the Department.
Finding no competent, substantial evidence to support the Commission's denial of in-line-of-duty benefits, we reverse the Commission's order, and remand the cause with directions that such benefits be awarded him.
WIGGINTON and NIMMONS, JJ., concur.